## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:18-cv-04281 |
| | ) | |
| CROSSROADS REAL ESTATE PARTNERS, LLC, successor by merger to SVN CROSSROADS MANAGEMENT, LLC, AMBER SHADID, and MOHAMMED HASSAN, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff ASPEN SPECIALTY INSURANCE COMPANY, by and through its attorneys, BatesCarey LLP, brings this Complaint for Declaratory Judgment against CROSSROADS REAL ESTATE PARTNERS, LLC, successor by merger to SVN CROSSROADS MANAGEMENT, LLC, AMBER SHADID, and MOHAMMED HASSAN. In support, Aspen alleges as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory judgment, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of determining ASPEN SPECIALTY INSURANCE COMPANY's ("Aspen") rights and legal obligations under a commercial general liability insurance policy issued by Aspen (the "Aspen Policy") to Commercial Industrial Building Owner's Alliance, Inc. ("CIBA") and 1110 Green, LLC ("1110 Green").

2. Aspen seeks a declaration that it owes no insurance obligations to Defendant CROSSROADS REAL ESTATE PARTNERS, LLC, successor by merger to SVN CROSSROADS MANAGEMENT, LLC ("Crossroads") in connection with a civil lawsuit

captioned *Amber Shadid and Mohammed Hassan v. Crossroads Real Estate Partners, LLC,*
*successor by merger SVN Crossroads Management, LLC*, originally filed in Circuit Court of the
Twenty-Second Judicial Circuit, McHenry County, Illinois under Case No. 17 AR 147, and
subsequently removed to the United States District Court for the Northern District of Illinois,
where it is currently pending as Case No. 3:18-cv-50011 (the "Underlying Lawsuit").

### PARTIES

3.　　Aspen is a corporation organized under the laws of the State of North Dakota with
its principal place of business in New York, New York.

4.　　Upon information and belief, Crossroads is a limited liability corporation
organized and existing under the laws of the State of Illinois, with a principal office in
Schaumberg, Cook County, Illinois.  Crossroads is the defendant in the Underlying Lawsuit.

5.　　Upon information and belief, Amber Shadid is a citizen of Illinois residing in
McHenry County.  Shadid is a plaintiff in the Underlying Lawsuit.

6.　　Upon information and belief, Mohammed Hassan is a citizen of Illinois residing
in McHenry County.  Hassan is a plaintiff in the Underlying Lawsuit.

7.　　Shadid and Hassan are named herein solely to the extent they may be deemed
necessary parties.  Aspen seeks no separate relief or judgment against Shadid and/or Hassan, but
rather seeks only to bind them to the outcome of this lawsuit, and will dismiss them from this
lawsuit to the extent they agree to be bound to any coverage determination between Aspen and
Crossroads.

### JURISDICTION AND VENUE

8.　　This Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 2201 and
2202, insofar as Aspen seeks a declaration of its rights and duties under the Aspen Policy.

Aspen seeks a declaration of the rights and obligations of the parties under the Aspen Policy, as an actual controversy exists with respect to coverage thereunder.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as complete diversity of citizenship exists between the Plaintiff and the Defendants, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.      Specifically, as set forth more fully herein, Crossroads has tendered its defense and indemnification in the Underlying Lawsuit to Aspen.  The Complaint in the Underlying Lawsuit claims damages up to $50,000.  On information and belief, Crossroads' defense costs in connection with the Underlying Lawsuit exceeds, or will exceed, $25,000.  Crossroads has sought reimbursement from Aspen for these defense costs in connection to the Underlying Lawsuit.  Therefore, the total value of the reimbursement for defense costs and indemnification sought by Crossroads in connection to the Underlying Lawsuit, and the amount in controversy in this action, exceeds the sum or value of $75,000.

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within this District, including the events giving rise to the Underlying Lawsuit.

**THE UNDERLYING LAWSUIT**

12.      On May 15, 2017, Shadid and Hassan filed a two-count Complaint (the "Underlying Complaint") against Crossroads in the Circuit Court of the Twenty-Second Judicial Circuit, McHenry County, Illinois, asserting a violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("the FDCPA") in Count I, and a violation of the Illinois Collection Agency Act, 225 Ill. Comp. Stat. § 425/1, *et seq.* ("the ICAA") in Count II.  A true and correct copy of the Underlying Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit A.

13.     The Underlying Complaint alleges Crossroads was or is attempting to collect an alleged debt from Shadid and Hassan, arising out of a lease for residential property located at 1110 N. Green Street, Apt. #402, in McHenry, Illinois.  (Exhibit A, ¶ 9).

14.     On information and belief, said residential property was owned by Aspen's insured, 1110 Green.

15.     The Underlying Complaint alleges Crossroads threatened to take legal action against Shadid and Hassan in connection with the alleged debt, and in fact did file a lawsuit (the "Prior Lawsuit") against Shadid and Hassan without legal standing to do so.  (Exhibit A, ¶¶ 10–11).

16.     The Underlying Complaint alleges the Prior Lawsuit was dismissed when the court ruled the debts Crossroads had attempted to collect were debts that may be owed to 1110 Green, but were not owed to Crossroads.  (Exhibit A, ¶ 11).

17.     In Count I of the Underlying Complaint, Shadid and Hassan allege Crossroads violated the FDCPA by engaging in conduct that was harassing, oppressive and/or abusive; using false and deceptive practices or misleading representations; praying for attorney's fees not properly owed; threatening to take action it could not legally take; filing a suit not using its true name; and attempting to collect expenses and charges for damages not owed.  (Exhibit A, ¶ 22).

18.     In Count II, the Underlying Complaint alleges Crossroads (as its predecessor entity, SVN Crossroads Management, LLC) systematically, willfully, and repeatedly violated the ICAA by filing the debt collection lawsuit, and for vigorously continuing with the suit even after it was advised it had no standing to sue for debts owed to 1110 Green. (Exhibit A, ¶¶ 24–30).

19.     On January 10, 2018, the Underlying Lawsuit was removed to the United States District Court for the Northern District of Illinois, where it is currently pending before Hon. Judge Frederick J. Kapala under Case No. 3:18-cv-50011.

**THE ASPEN POLICY**

20. Aspen issued Commercial General Liability Policy No. CR003KH15 to CIBA for the two-year period commencing March 31, 2015 (the "Aspen Policy"). A true and accurate copy of the Aspen Policy is attached hereto as Exhibit B.

21. 1110 Green is a "Named Insured" under the Aspen Policy pursuant to a Certificate of Liability Insurance issued for the period June 30, 2015 to June 30, 2016.

22. The Insuring Agreement of Coverage A of the Aspen Policy's Commercial General Liability Coverage Form provides:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury or "property damage" to which this insurance does not apply.

\*      \*      \*

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" . . .

(Exhibit B, p. 11).

23. The Aspen Policy defines "Bodily injury" as "bodily injury, sickness disease sustained by a person, including death resulting from any from any of these at any time." (Exhibit B, p. 29).

24. The Aspen Policy defines "Property damage" as:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Exhibit B, p. 23).

25.  The Aspen Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Exhibit B, p. 22).

26.  Coverage A, Section 2 of the Aspen Policy' Commercial General Liability Form also provides:

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property."

(Exhibit B, pp. 11–12).

27.  The Insuring Agreement of Coverage B of the Aspen Policy's Commercial General Liability Coverage Form provides:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we have no duty to defend the insured against any "suit" seeking damages for

"personal and advertising injury" to which this insurance does not apply . . .

\*      \*      \*

b.      This insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period.

(Exhibit B, p. 15).

28.      The Aspen Policy defines "Personal and Advertising Injury" as follows:

14.      'Personal and advertising injury' means injury, including consequential 'Bodily injury' arising out of one or more of the following offenses:

a.      False arrest, detention or imprisonment;

b.      Malicious prosecution;

c.      The wrongful eviction from or wrongful entry into a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.      Oral or written publication of material that violates a person's right of privacy;

f.      The use of another's advertising idea in your "advertisement"; or

g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Exhibit B, p. 22).

## ASPEN'S DENIAL OF CROSSROADS' TENDER OF DEFENSE AND INDEMNITY

29.      On February 23, 2018, Crossroads tendered the Underlying Lawsuit to Aspen for coverage, defense, and indemnification under the Aspen Policy. (A true and accurate copy of

Crossroads' February 23, 2018 tender of defense and indemnity letter is attached hereto as Exhibit C).

30.     On May 14, 2018, Aspen responded to Crossroads' tender through its authorized claims administrator Claims Adjusting Group, Inc., informing Crossroads that it had determined Aspen had no obligation to provide Crossroads with coverage, a defense, or indemnification from the claims made against Crossroads in the Underlying Lawsuit.  (A true and accurate copy of Aspen's May 14, 2018 letter is attached hereto as Exhibit D).

31.     After Aspen denied Crossroad's tender of defense and indemnity, counsel for Aspen requested that Crossroads withdraw its tender of defense and indemnity for the reasons stated in Aspen's May 14, 2018 letter.

32.     Crossroads has not withdrawn its tender of defense.

33.     Accordingly, an actual controversy exists among Aspen and Crossroads as to whether Crossroads is entitled to coverage, defense, and indemnity under the Aspen Policy.

### COUNT I
### Declaratory Judgment – No Coverage Obligation Under The Aspen Policy

34.     Aspen re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

35.     For coverage to potentially apply under Coverage A of the Aspen policy, a claimant must seek damages from Aspen's insured because of "bodily injury" or "property damage" that occurs during the policy period and is caused by an "occurrence" that takes place in the "coverage territory."

36.     Even if Crossroads qualifies as Aspen's "insured" under the Aspen Policy, none of the damages sought by Shahid and Hassan in the Underlying Complaint are reflective of "property damage" or "bodily injury" as defined in the Aspen Policy.

37.     Further, even if some of the damages sought in the Underlying Complaint are reflective of "property damage" or "bodily injury" as defined in the Aspen policy, such damages would not have been the result of an "occurrence" or accident as required to trigger coverage under the Aspen policy.

38.     Any potential "bodily injury" alleged in the Underlying Complaint arose out of intentional and willful conduct by Crossroads, and is not covered by the Aspen Policy.

39.     None of the allegations of the Underlying Complaint give rise to "personal and advertising injury" as defined by Coverage Part B of the Aspen Policy.

40.     Therefore, Aspen seeks a declaratory judgment that Crossroads is not entitled to coverage, defense, or indemnification under the Aspen Policy in connection to the Underlying Lawsuit.

WHEREFORE, Plaintiff Aspen respectfully requests pursuant to 28 U.S.C. § 2201, *et seq.*, that this Honorable Court enter a declaratory judgment that Aspen owes no coverage, defense, or indemnity obligations to Crossroads under the Aspen Policy in connection to the Underlying Lawsuit, and for such other and further relief as this Court deems just and equitable.

**COUNT II**
**Declaratory Judgment – No Indemnification or Defense Obligation Under The Management Agreement**

41.     Aspen re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

42.     On information and belief, at all times relevant, 1110 Green had entered into a "Management Agreement" with Crossroads pertaining to the property located at 1104-1130 N. Green Street, McHenry, Illinois, including the property leased by Shadid and Hassan.  (The purported Management Agreement between 1110 Green and Crossroads, which was provided to Aspen by Crossroads, is attached hereto as Exhibit E.)

43.     Section 6 of the Management Agreement governing indemnification provides as follows:

> 6.      Indemnification: Owner [1110 Green] shall indemnify, defend, hold Agent [Crossroads] harmless from and against all claims, losses and liabilities (including reasonable attorney's fees and costs) arising out of damage to property or injury to, or death of, persons (including subcontractors and employees) occasioned by or in connection with the condition of the Property (except as provided below) or as a result of the acts or omissions of Owner or Owner's agents, employees or subcontractors (only excluding them from the grossly negligent or willful acts or omissions of Agent). . . .
>
> Owner and Agent further agree: (i) to indemnify, defend, and hold each other harmless from claims arising from . . . injuries to persons . . . arising from any cause whatsoever in, on, or about the Property which occurs when Agent is performing its duties within the scope of this Agreement or otherwise acting pursuant to the express or implied direction of Owner.  **Owner shall not indemnify Agent for any loss or damage if caused due to gross negligence or fraud by Agent** . . .

(Exhibit E, p. 3, § 6) (emphasis added).

44.     The Underlying Lawsuit does not allege any injuries occasioned by the "condition" of the property described in the Management Agreement or as the result of actions/omissions by 1110 Green.

45.     There is no indication from the Underlying Lawsuit that Crossroads' conduct took place on the property owned by 1110 Green, and the Underlying Lawsuit alleges Crossroads' conduct took place after Claimants had moved away from the property.

46.     Accordingly, the Underlying Complaint does not allege any conduct by Crossroads that requires 1110 Green or its insurer, Aspen, to defend or indemnify Crossroads in the Underlying Lawsuit.

47.     Moreover, the Underlying Lawsuit alleges "grossly negligent or willful acts" by Crossroads (Exhibit A, ¶ 30), which is not indemnifiable in the Management Agreement.

48.     Section 9 of the Management Agreement also provides, in relevant part:

> 9.     Collections: . . . Agent [Crossroads] shall not, institute any legal proceedings with respect to such collection activities without Owners [1110 Green] prior approval.  **All such legal proceedings shall be brought in Owner's name** and owner shall cooperate with Agent in all such proceedings, which shall be at Owner's sole expense.  Owner shall have the right to choose legal counsel in any proceedings relating to collection activities.   Agent will keep Owner advised, from time-to-time, of Agent's collection activities hereunder.

(Exhibit E, p. 5, § 9) (emphasis added).

49.     The Underlying Complaint alleges that in the Prior Lawsuit, Crossroads sued Shadid and Hassan in its own name, rather in the name of 1110 Green (*see* Exhibit A, ¶¶ 11, 12, 23(G)), thereby breaching its contractual duties under § 9 of the Management Agreement.

50.     Since Crossroads breached its own contractual obligations to 1110 Green under the § 9 of the Management Agreement giving rise, in part, to the Underlying Lawsuit, 1110 Green and its insurer, Aspen, owe no duty to defend or indemnify Crossroads in the Underlying Lawsuit.

51.     Finally, the foregoing Indemnification provision in § 6 of the Management Agreement cannot be construed, under Illinois common law, to require 1110 Green or its insurer, Aspen, to indemnify Crossroads for Crossroad's own conduct.

52.     Therefore, Aspen seeks a declaratory judgment that Crossroads is not entitled to coverage, defense, or indemnification under the Management Agreement in connection with the Underlying Lawsuit.

53.     Aspen seeks a further declaratory judgment that Aspen owes no coverage, defense, or indemnity obligations to Crossroads under the Aspen Policy in connection with the Management Agreement.

WHEREFORE, Plaintiff Aspen respectfully requests pursuant to 28 U.S.C. § 2201, *et seq.*, that this Honorable Court enter a declaratory judgment that Aspen owes no coverage, defense, or indemnity obligations to Crossroads under the Management Agreement in connection to the Underlying Lawsuit, and for such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

June 20, 2018                                Respectfully submitted,

                                             BatesCarey LLP

                                             By:  /s/ Andrew S. Chestnut
                                             Matthew M. Murphy
                                             Andrew S. Chestnut
                                             191 North Wacker, Suite 2400
                                             Chicago, IL 60606
                                             Ph:  312.762.3100
                                             Fax: 312.762.3200
                                             mmurphy@batescarey.com
                                             achestnut@batescarey.com

                                             *Attorneys for Aspen Specialty Insurance Company*

1981301.4